**UNITED STATES DISTRICT COURT**        **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| GEORGE W. DAVIS, IV, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:14-CV-480 |
| | § | |
| MOTIVA ENTERPRISES, LLC and | § | |
| MOTIVA COMPANY, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendants Motiva Enterprises, LLC and Motiva Company's (collectively, "Motiva") Motion for Summary Judgment (#39), wherein Motiva seeks summary judgment as to Plaintiff George W. Davis, IV's ("Davis") claims brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000h-6. Having considered the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that Motiva's motion should be granted.

I.    Background

On July 28, 2014, Davis, an African American, filed suit against Motiva, his former employer, for terminating his employment on the basis of his race in violation of Title VII.[1] His complaint also references a hostile work environment, though it appears that Davis has abandoned that claim.[2] *See* Docket No. 43 (Response to Motiva's Motion for Summary Judgment) (stating

---

[1] Defendants contend that Davis was employed by Motiva Company rather than Motiva Enterprises, LLC.

[2] Motiva moved for summary judgment as to any hostile work environment claim; nonetheless, Davis failed to address the merits of any such claim in his responsive brief. *See Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007) (stating that inadequately briefed issues are considered

that Davis "filed suit under Title VII, with his sold [sic] claim being that he was discharged from employment because of his race" and acknowledging that Davis's evidence alone "may not support a 'hostile work place' determination"). The case was removed to this court on September 22, 2014. An amended complaint was filed on November 20, 2014.

Motiva, a fuel refiner and distributor, employed Davis as an operator for nearly seven years, beginning in the Spring of 2007 and ending on January 23, 2014. More specifically, for approximately the first three years, Davis worked at Motiva's Port Arthur Refinery ("PAR") as a "rackman" in the Lube Oil Movements Department ("LOMD"). He also worked as a "south pumper" in the same department and location for about two years. Thereafter, and until his termination, Davis worked in the Port Arthur Terminal ("PAT"), a geographically separate area where various products are loaded and offloaded from vessels by means of facilities and equipment.

Motiva's PAT has three docks or "berths" known as Berths 2, 6, and 7. Ships dock at Berth 2, barges dock at Berths 6 and 7, gasoline is loaded at Berths 2 and 6, and Berth 7 is a "lube oil" dock. There are potential sources of explosive vapors at the dock at Berth 7. On January 13, 2014, Davis was working at Berth 7 when he was observed using his iPhone. His actions were

---

waived); *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 525-26 (5th Cir. 2005); *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 653 (5th Cir.), *cert. denied*, 543 U.S. 979 (2004); *United States ex rel. Phillips v. L-3 Commc'ns Integrated Sys., L.P.*, No. 3:10-CV-1784, 2012 WL 3649699, at *9 (N.D. Tex. Aug. 24, 2012) (treating relator's conspiracy claim abandoned where he failed to respond to motion to dismiss); *accord United States v. Stanley*, 595 F. App'x 314, 317 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 2891 (2015) (stating that a party's failure to raise an issue in response to a motion for summary judgment is a waiver, and the subsequent filing of a motion for reconsideration does not abrogate the waiver); *Moore v. Delta Airlines, Inc.*, No. 3:10-CV-2241, 2012 WL 685414, at *5 (N.D. Tex. Mar. 1, 2012) (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)) (holding that the plaintiff abandoned any claims not addressed in her summary judgment response); *Penrod v. Bank of N.Y. Mellon*, 824 F. Supp. 2d 754, 762-63 (S.D. Tex. 2011).

captured on a security camera. After conducting an investigation, Motiva management terminated Davis's employment on January 23, 2014, reportedly because he violated Motiva's "Life-Saving Rule 1" or "LSR 1" when he used his iPhone at Berth 7 without a valid permit.

A.    Motiva's Rules and Policies

Since 2009, Motiva has maintained 12 Life-Saving Rules that are intended to prevent injury and death. LSR 1 requires Motiva employees to "Work with a valid work permit when required." LSR 9 warns employees, "No alcohol or drugs while working or driving." LSR 10 states, "While driving, do not use your phone and do not exceed speed limits." Instructional materials from Motiva set forth the consequences of rule-breaking:

> Failure to comply with any Life-Saving Rule will result in disciplinary action. For Motiva employees, this includes termination of employment.

> If the violator is aware of the rule or required procedure through training, experience or communication, and did not comply with that rule or procedure, the **maximum appropriate disciplinary action** will be applied.

> For rules 10-12, considered lower risk activities, formal disciplinary consequences will be applied following the site's existing disciplinary processes.

At deposition, Gregory Willms ("Willms"), the General Manager of Motiva's PAR at the time of Davis's infraction, stated that the twelve LSRs apply to all Motiva employees. According to Davis, company discipline for employee violations of the first nine LSRs are meant to be applied uniformly, meaning termination of the violator's employment. Motiva disputes this characterization of the rules, asserting that certain mitigating factors can come into play.

In addition to the foregoing LSRs, Motiva has a Portable Electronic Products ("PEP") Policy, SHE0102, which Motiva considers "necessary to control and minimize sources of ignition due to operation of a . . . [portable electronic product] in close proximity to potential sources of

flammable vapors or liquids." Motiva contends that Davis was provided with this policy, as applicable to Motiva's PAT docks, in December 2011 and attaches a document signed by Davis, which states, "I have viewed and understand the General Refinery Safety Videotape and/or the Process Safety Management Videotape, and agree to follow all rules and regulations as outlined." The PEP Policy provides in relevant part that "Only portable electronic products (PEPs) that are rated for hazardous areas are allowed in process units or hydrocarbon handling areas." Examples of devices rated for hazardous areas are personal H2S monitors and Motorola radios. Further,

> PEPs that are not rated for hazardous areas are restricted unless properly permitted, including conducting proper gas testing of the area where they will be used. Regardless of whether the PEP is switched on or off, PEPs that are not classified for hazardous areas are not permitted in hazardous areas. This includes, but is not limited to devices such as cell phones . . ., unless they are listed or labeled for hazardous (classified) areas or are permitted for use in the area."

Motiva's procedures for Issuing Work Permits Policy, SHE0052, was in effect on January 13, 2014, and set forth the various work permit requirements at Motiva's PAR and PAT. Generally, prior to the beginning of work in any regulated area, a properly prepared work permit must be issued and all conditions/limitations met, including a "mutual understanding" by the signer and acknowledger. Due to the nature of the flammable products Motiva manufactures and delivers, permitting is a "very, very important line of defense to protect employees, the equipment at the plant, and the surrounding community." A work permit is a contract between the person authorizing and the person performing the work to insure completion of the task in a safe manner.

A properly prepared "Hot Work Permit" must be "obtained before introducing any source of ignition into a process unit/area or in or near (within 35 feet) electrically classified areas (significant amount of flammable or combustible material)." "Hot Work" is "any operation or job which could provide or become an ignition source for any type of flammable materials."

4

Examples of "Hot Work" include: "R. Use of battery powered equipment (*i.e.*, cameras, telephones, audiovisual equipment, etc.)"; "Q. Use of internal Combustion Engine"; and "S. Operation of motorized equipment other than in an 'Open' Area." Hot Work Permits are not required to operate vehicles in "Open" areas such as unblocked roads or designated parking areas.

For purposes of SHE0052, the dock at Berth 7 is a process area that is also an electrically classified area. Motiva contends that the "PAT Docks" are also considered a "hazardous" area; however, Davis disputes this assertion. According to Motiva, signage at the dock at Berth 7 on January 13, 2014, stated "NO CELL PHONE USE IN THIS AREA." Davis testified at deposition that although he does not deny that a sign prohibiting cell phones was present at the time he worked at Motiva, he does not recall any such sign. Additionally, Davis acknowledges that "use of cellular phones in process areas is not allowed," but he claims that "the docks aren't a process area because we don't — we don't process anything. We don't — we don't make anything."

Brett David Woltjen ("Woltjen"), Motiva's PAR production manager, testified that as a dockman, Davis was charged with complying with Coast Guard regulations governing hydrocarbon product transfers from Motiva's PAT to maritime ships and barges, with duties such as completing pre-transfer safety checklists. Motiva attaches an example of a permit reportedly completed by Davis. Davis disputes these two assertions; nonetheless, he does not specifically address them in his response.

B.      Davis's Actions and Motiva's Investigation

Security cameras captured Davis using his cell phone at the dock at Berth 7 on January 13, 2014. The video footage also showed that Davis violated the following safety rules: not wearing

the required personal protective equipment, including a hard hat, safety glasses, and gas monitor; not wearing a flotation device within six feet of the edge of the water; ascending and descending stairs without using guard rails; walking on hydrocarbon hoses; and stepping onto and off of a barge without using the required gangway. Davis does not deny his safety infractions beyond the use of his phone. For example, he stated that he had forgotten to wear his hard hat and glasses, that while he knew life jackets were required within six feet of the water he forgot to wear one because he was "not thinking," and "sometimes there is no way around" the hydrocarbon hoses.

Motiva conducted an investigation into Davis's alleged safety infractions. The investigation was conducted by Davis's supervisor, Dollnila Slater ("Slater"),[3] and Sabrina Wolfe ("Wolfe") of Motiva's HR department. Slater questioned Davis about his actions and stated that he admitted to her "that he could not use the cell phone while in that area," although he claimed to have been using the phone to record work readings.[4] Davis also denies that he made the aforementioned statement and insists that he was unaware that the dock at Berth 7 was a process area. Notes memorializing the investigation indicate that Davis "acknowledged that there was a 'no cell phones' sign at the entrance to the terminal," that he knew of the "zero tolerance for cell phone usage," and that he was "aware of a contractor being removed from the terminal recently because he was using his cell phone and that he was not authorized to do so." At deposition, however, Davis claimed that he did not recall making those statements. In a subsequently

---

[3] Motiva points out that Slater is African American. Davis does not specifically dispute this assertion.

[4] He later testified that he also "texted" that day.

executed declaration, Davis maintained that the contractor was removed for reasons unrelated to cell phone usage.

Davis did not "have a permit to use a cell phone at the dock," and he had not been given permission by the lead operator to use the cell phone. Further, according to Motiva, Davis's use of a cell phone at Berth 7 without a permit was not authorized whether he was entering barge readings or texting a friend.

C.      The Decision to Terminate Davis's Employment

The decision to terminate Davis's employment was ultimately made by Steve Rathweg, Motiva's Vice President of Manufacturing in Houston, Texas. His decision was based upon the unanimous recommendation of Slater, Willms, Woltjen, and Lee Poulter ("Poutler"), the Human Resources ("HR") Manager. Motiva contends that the reason for Davis's termination was his violation of LSR 1, which was based upon his use of a cell phone in a process area. Davis's violation of other safety rules, standing alone, reportedly would have resulted in disciplinary action short of termination. Willms's testimony is consistent in this regard.

D.      This Lawsuit

Following Davis's termination, he filed suit under Title VII, alleging that Motiva discharged him because of his race. On December 23, 2015, Motiva filed the instant motion, asserting that it is entitled to summary judgment because Davis failed to establish a *prima facie* case of race discrimination. Motiva alternatively argues that: (1) Davis has failed to produce evidence that Motiva's proffered reason for terminating Davis's employment was a pretext for unlawful discrimination; (2) there is no evidence that race was a motivating factor in Davis's

discharge; and (3) Motiva would have made the same employment decision regardless of Davis's race.

Davis responds that the evidence does establish a *prima facie* case that Motiva terminated Davis's employment on the basis of his race. Davis also argues that the record evidence demonstrates a genuine issue of material fact that Motiva's termination of Davis's employment was a pretext for race discrimination or, alternatively, that race was a motivating factor in his discharge. In support of his position, Davis points to numerous individuals outside his protected class that he claims were similarly situated but were treated more favorably. According to Davis, therefore, summary judgment is not warranted.

II.    <u>Analysis</u>

A.    <u>Summary Judgment Standard</u>

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *accord Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Davis v. Fort Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014); *Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 407 (5th Cir. 2012).

"A fact issue is material if its resolution could affect the outcome of the action." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015); *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014); *accord Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). "Factual disputes that are irrelevant or unnecessary will not be counted." *Tiblier*, 743 F.3d at 1007 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Hudspeth v. City of Shreveport*, 270 F. App'x 332, 334 (5th Cir. 2008) (quoting *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001)). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hefren*, 820 F.3d at 771 (quoting *Anderson*, 477 U.S. at 248); *Tiblier*, 743 F.3d at 1007; *accord Haverda v. Hays Cty.*, 723 F.3d 586, 591 (5th Cir. 2013). The moving party, however, "need not negate the elements of the nonmovant's case." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010); *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to demonstrate the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3; *see Beard v. Banks*, 548 U.S. 521, 529 (2006) (quoting FED. R. CIV. P. 56(e)); *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013). The court must "review the record 'taken as a whole.'" *Black v. Pan Am. Labs., LLC*, 646 F.3d 254, 273

(5th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986))); *see City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014). All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility. *Reeves*, 530 U.S. at 150; *Tiblier*, 743 F.3d at 1007; *see Hefren*, 820 F.3d at 771. The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in his favor. *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1863 (2014) (citing *Anderson*, 477 U.S. at 255); *Hemphill*, 805 F.3d at 538; *Pioneer Expl., L.L.C.*, 767 F.3d at 511.

Furthermore, "only reasonable inferences in favor of the nonmoving party can be drawn from the evidence." *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 779 (E.D. Tex. 2008) (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992)); *accord Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012). "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 528 (5th Cir. 1999) (quoting *Eastman Kodak Co.*, 504 U.S. at 468-69); *accord Shelter Mut. Ins. Co. v. Simmons*, 543 F. Supp. 2d 582, 584-85 (S.D. Miss.), *aff'd*, 293 F. App'x 273 (5th Cir. 2008). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill*, 805 F.3d at 538 (citing *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)); *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *accord Stauffer v. Gearhart*, 741 F.3d 574, 581 (5th Cir. 2014).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *Tiblier*, 743 F.3d at 1007; *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013). "[W]here the nonmoving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist." *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010). In such a situation, "'[a] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial' and 'mandates the entry of summary judgment' for the moving party." *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir.), *cert. denied*, 555 U.S. 1012 (2008) (quoting *Celotex Corp.*, 477 U.S. at 322-23).

B.     Evidentiary Objections

As an initial matter, the court must address Davis's challenges to Motiva's summary judgment evidence. Davis objects to numerous statements in Wolfe's declaration, asserting that they represent improper "opinion" evidence" and are hearsay within hearsay. Specifically, Wolfe's affidavit contains statements regarding: job titles, work locations, and managers of Davis's alleged comparators; the significance of logo colors on LSR reminder cards issued to Motiva employees; the races of Eleazar Garcia ("Garcia") and James Ray, who were discharged for LSR violations; the fact that Davis was not retirement eligible; the fact that the ultimate decision maker retired from Motiva on January 1, 2015; and the exclusion of a contractor for cell phone use.

Wolfe's declaration states that she is the Industrial Relations Advisor in Motiva's HR Department, and her duties include union relations, employee relations, day-to-day HR activities such as conducting interviews and investigations, accessing and reviewing personnel and other HR related files and records, and related duties. She also states that she has personal knowledge of the statements contained in her declaration. Thus, it appears that Wolfe's personal knowledge was gained from her role as an Industrial Relations Advisor and her review of Motiva's company or business records. *See* FED. R. EVID. 803(6) (recognizing that hearsay statements are admissible if they constitute records of a regularly conducted activity); *see also* FED. R. EVID. 701 (stating that lay witness testimony in the form of an opinion is permitted when rationally based on the witness's perception, helpful to clearly understanding the witness's testimony or to determining a fact in issue, and is not based on scientific, technical, or other specialized knowledge). An "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4).

Based on the statements in Wolfe's declaration and the applicable law, the court finds her declaration sufficient to consider on summary judgment. *See Sarkar v. Petroleum Co. of Trinidad & Tobago Ltd.*, No. H-15-2372, 2016 WL 3568114, at *4 n.58 (S.D. Tex. June 23, 2016) (finding a declaration sufficient where the declarant identified his managerial role in the company and stated that his declaration was based upon personal knowledge and his review of the company's business records); *Miceli v. The Bank of New York Mellon*, No. 1:13-CV-1032, 2015 WL 300671, at *11 (W.D. Tex. Jan. 21, 2015) (affidavit sufficient where the affiant stated her role as a company representative, that her personal knowledge was gained in that capacity, and

the documents she presented were from the company's records or were public record).  In any

event, at the summary judgment stage, a party "need not reduce all its evidence to an admissible

form." *Roque v. Natchitoches Parish Sch. Bd.*, 583 F. App'x 466, 471 (5th Cir. 2014) (citing

*Celotex Corp.*, 477 U.S. at 324).

    C.      Employment Discrimination—General Burden of Proof

Title VII provides that "[i]t shall be an unlawful employment practice for an employer—(1)

to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-

2(a)(1); *accord Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, ___ U.S.

___, 135 S. Ct. 2507, 2516 (2015); *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, ___ U.S. ___,

135 S. Ct. 2028, 2031 (2015); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S. Ct.

2517, 2525 (2013); *Vance v. Ball State Univ.*, ___ U.S. ___, 133 S. Ct. 2434, 2440 (2013). "The

purposes of Title VII are to achieve equality of employment opportunity and to make persons

whole for injuries suffered on account of unlawful employment discrimination." *Floca v.

Homcare Health Servs., Inc.*, 845 F.2d 108, 111 (5th Cir. 1988) (citing *Albemarle Paper Co. v.

Moody*, 422 U.S. 405, 417 (1975)); *see also Nassar*, ___ U.S. at ___, 133 S. Ct. at 2522.

In employment discrimination cases, a plaintiff may rely on direct or circumstantial

evidence. *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir.

2015) (citing *Portis v. First Nat'l Bank*, 34 F.3d 325, 328 (5th Cir. 1994)); *Black*, 646 F.3d at

279; *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010); *Lauderdale v. Tex. Dep't of Crim.

Justice*, 512 F. 3d 157, 166 (5th Cir. 2007). "Absent direct evidence of discriminatory intent, as

is typically the case, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973)." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000); *see Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 455 (2006); *Reeves*, 530 U.S. at 142-43; *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012); *Fahim v. Marriott Hotel Servs.*, 551 F.3d 344, 349 (5th Cir. 2008). Under that framework, the plaintiff must initially establish a *prima facie* case by satisfying a multi-factor test from which a discriminatory motive may be inferred, thus creating a rebuttable presumption of intentional discrimination. *Reeves*, 530 U.S. at 142-43; *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 362-63 (5th Cir. 2013); *Turner*, 675 F.3d at 892; *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007); *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "To establish a *prima facie* case, a plaintiff need only make a very minimal showing." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quotation omitted)); *accord Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012); *Turner*, 675 F.3d at 892 ("The burden of establishing a *prima facie* case of disparate treatment is not onerous.").

If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate—but not prove—a legitimate, nondiscriminatory reason for its employment decision. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003); *Reeves*, 530 U.S. at 142; *McDonnell Douglas Corp.*, 411 U.S. at 802; *Haire*, 719 F.3d at 363; *Reed*, 701 F.3d at 439 (quoting *Black*, 646 F.3d at 259); *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011); *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142 (quoting *St.*

*Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)); *accord Vaughn*, 665 F.3d at 636; *Alvarado*, 492 F.3d at 611. "The [employer] can meet this burden by submitting evidence that if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Sullivan v. Worley Catastrophe Servs., L.L.C.*, 591 F. App'x 243, 246 (5th Cir. 2014) (quoting *Hicks*, 509 U.S. at 507)); *accord Vaughn*, 665 F.3d at 636.

If the employer meets its burden, "'the *McDonnell Douglas* framework—with its presumptions and burdens'—disappear[s], . . . and the sole remaining issue [is] 'discrimination *vel non*.'" *Reeves*, 530 U.S. at 142-43 (quoting *Hicks*, 509 U.S. at 510); *Turner*, 675 F.3d at 901; *Black*, 646 F.3d at 271; *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *accord Hicks*, 509 U.S. at 507; *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). In attempting to satisfy this burden, the plaintiff must "offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 702 (5th Cir. 2014) (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)); *accord Vaughn*, 665 F.3d at 636; *Fahim*, 551 F.3d at 349; *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 356 (5th Cir. 2007), *cert. denied*, 552 U.S. 1166 (2008). "In assessing whether a protected characteristic was

'a motivating factor,' a court must consider the evidence presented by the plaintiff as a whole." *Taylor v. Peerless Indus. Inc.*, 322 F. App'x 355, 365 (5th Cir. 2009) (citing *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 355 (5th Cir. 2005)). If the plaintiff demonstrates that race was a "motivating factor" in the employment decision, the defendant must then prove "that the same adverse employment decision would have been made regardless of discriminatory animus." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (quoting *Rachid*, 376 F.3d at 312); *accord Black*, 646 F.3d at 269 n.6; *Machinchick*, 398 F.3d at 352. The plaintiff will prevail if the employer fails to carry this burden. *Keelan*, 407 F.3d at 341; *Machinchick*, 398 F.3d at 352; *Rachid*, 376 F.3d at 312.

The "plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Reeves*, 530 U.S. at 143); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001), *cert. denied*, 535 U.S. 1078 (2002); *accord Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015); *Allen v. Radio One of Tex. II, L.L.C.*, 515 F. App'x 295, 299 (5th Cir. 2013). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton*, 333 F.3d at 578 (citing *Sandstad v. CB Richard Ellis*, 309 F.3d 893, 899 (5th Cir. 2002); *accord Vaughn*, 665 F.3d at 637; *Burrell*, 482 F.3d at 412. "[I]t is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Reeves*, 530 U.S. at 147; *accord Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 861 (5th Cir. 2010); *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 476 (5th Cir. 2005), *cert. denied*, 546 U.S. 1090 (2006); *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 574 (5th Cir. 2004). "Evidence demonstrating that the

employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination without further evidence of defendant's true motive." *Laxton*, 333 F.3d at 578 (citing *Sandstad*, 309 F.3d at 897); *accord Haire*, 719 F.3d at 365 n.10; *Black*, 646 F.3d at 276; *Machinchick*, 398 F.3d at 351 (citing *Reeves*, 530 U.S. at 147-48). "[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Russell*, 235 F.3d at 223 (quoting *Reeves*, 530 U.S. at 147); *accord Black*, 646 F.3d at 276; *Laxton*, 333 F.3d at 578; *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003).

Hence, the plaintiff need not, as a matter of course, introduce additional, independent evidence of discrimination to avoid summary judgment. *Reeves*, 530 U.S. at 148; *Ratliff v. City of Gainesville*, 256 F.3d 355, 361-62 (5th Cir. 2001); *Blow v. City of San Antonio*, 236 F.3d 293, 298 (5th Cir. 2001); *Russell*, 235 F.3d at 223. Once a Title VII case reaches the pretext stage, the only question on summary judgment is whether there is a conflict in substantial evidence to create a question for the fact-finder. *Lavigne v. Cajun Deep Found., LLC*, 32 F. Supp. 3d 718, 732 (M.D. La. 2014), *aff'd*, No. 15-30727, 2016 WL 3626719 (5th Cir. 2016) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)).

Ultimately, "[w]hether summary judgment is appropriate depends on numerous factors, including 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case'" that properly may be considered by the court when ruling on a motion for summary judgment. *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *Reeves*, 530 U.S. at 148-49);

*accord Machinchick*, 398 F.3d at 351 n.14; *Laxton*, 333 F.3d at 579; *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). Because the plaintiff has the ultimate burden of proving intentional discrimination, "[a]n employer is entitled to judgment as a matter of law on this ultimate question 'if the evidence taken as a whole would not allow a jury to infer that the actual reason for the [employer's decision] was discriminatory.'" *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 564 (5th Cir.), *cert. denied*, 534 U.S. 817 (2001) (quoting *Vadie v. Miss. State Univ.*, 218 F.3d 365, 372 (5th Cir. 2000), *cert. denied*, 531 U.S. 1150 (2001)). "A mere scintilla of evidence of pretext does not create an issue of material fact in all cases." *Crawford*, 234 F.3d at 902 (citing *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 301 (5th Cir. 2000), *cert. denied*, 531 U.S. 1145 (2001)). "It is, therefore, possible for a plaintiff's evidence to permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination." *Crawford*, 234 F.3d at 903 (citing *Travis v. Bd. of Regents of the Univ. of Tex. Sys.*, 122 F.3d 259, 263 (5th Cir. 1997), *cert. denied*, 522 U.S. 1148 (1998)); *accord West*, 330 F.3d at 385. "The determination must be made on a case-by-case basis, depending on the nature, extent, and quality of the evidence, as to whether a jury could reasonably infer discrimination." *Crawford*, 234 F.3d at 903.

      D.    Prima Facie Case of Discriminatory Discharge under Title VII

To establish a *prima facie* case of discriminatory discharge under Title VII, a plaintiff must show that:

      (1)    he is a member of a protected class;

      (2)    he was qualified for the position;

      (3)    he was discharged; and

(4)      he was replaced by someone outside the protected class or that similarly situated persons outside of the class were treated more favorably than he.

*Willis v. Cleco Corp.*, 749 F.3d 314, 320 (5th Cir. 2014); *Haire*, 719 F.3d at 364; *Black*, 646 F.3d at 259; *Fahim*, 551 F.3d at 350; *Alvarado*, 492 F.3d at 611. In work-rule violation cases, such as this, "a Title VII plaintiff may establish a *prima facie* case by showing 'either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly.'" *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (quoting *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir.), *cert. denied*, 449 U.S. 879 (1980)); *see Turner*, 675 F.3d at 892-93.

In the case at bar, the fourth *prima facie* element is the only factor at issue. Further, the first clause of that element, relating to replacement by one outside the plaintiff's protected class, is not applicable here, as it is undisputed that Davis was replaced by an African American.[5] Consequently, to establish a *prima facie* case, Davis must show that employees not of his protected class received preferential treatment under circumstances nearly identical to his. *Willis*, 749 F.3d at 320; *Haire*, 719 F.3d at 364; *Vaughn*, 665 F.3d at 637; *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259-61 (5th Cir. 2009); *see also Perez v. Tex. Dep't of Crim. Justice*, 395 F.3d 206, 210 (5th Cir. 2004), *cert. denied*, 546 U.S. 976 (2005) (emphasizing that assessment of similarity of employees must be viewed from the employer's perspective). In other words, Davis must show that a non-African-American employee, who engaged in comparable conduct under similar

---

[5] "[I]t is well settled that, although replacement with a non-member of the protected class is evidence of discriminatory intent, it is not essential to the establishment of a *prima facie* case under Title VII." *Williams v. Trader Publ'g Co.*, 218 F.3d 481, 485 (5th Cir. 2000) (citing *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246-47 (5th Cir. 1985)); *see Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 426-27 (5th Cir. 2000); *Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 n.7 (5th Cir. 1997).

circumstances, was not terminated. *See Lee*, 574 F.3d at 260; *Perez*, 395 F.3d at 210; *Aguinaga v. Tex. Alcohol & Beverage Comm'n*, 98 F. App'x 328, 331 (5th Cir. 2004) (holding that plaintiff failed to establish a *prima facie* case of discrimination because he did not provide comparator employees in "nearly identical" circumstances, given their different supervisors, job descriptions, and disciplinary rules).

"The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Turner*, 675 F.3d at 893 (quoting *Lee*, 574 F.3d at 260); *accord Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 659 (5th Cir.), *cert. denied*, 133 S. Ct. 136 (2012). Also, "the conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Lee*, 574 F.3d at 260; *see Perez*, 395 F.3d at 210 (emphasizing that assessment of similarity of employees must be viewed from employer's perspective). But, "[e]ach employee's track record at the company need not comprise the identical number of identical infractions, albeit these records must be comparable." *Lee*, 574 F.3d at 260-61.

In this case, Davis alleges that he was wrongfully terminated for violating LSR 1, working without a permit when a permit was required, whereas several non-black Motiva employees were not terminated after violating the same or another LSR. In support of his position, Davis argues that Motiva management had no discretion to apply discipline short of termination for violations of the first nine LSRs. The court disagrees. The instructional LSR training materials issued by Motiva state that the failure to comply with any LSR will result in disciplinary action, which, for

Motiva employees, "*includes* termination of employment." (emphasis added). Notably, Motiva's guidance does not say "*mandates* termination of employment." Further, the materials provided include a qualifier: "*If the violator is aware of the rule or required procedure through training, experience or communication*, and did not comply with that rule or procedure, the maximum *appropriate* disciplinary action will be applied." (emphasis added). Based on this language, it appears that Motiva retains discretion to mete out discipline short of termination where a rule is broken, even when Motiva's investigation indicates that the violator was aware of the rule or required procedure.

Motiva moves for summary judgment on the basis that Davis has failed to identify similarly situated employees outside his protected class who were treated more favorably in nearly identical circumstances. In his responsive brief, Davis argues that the following Motiva employees are valid comparators: Larry Vincent ("Vincent"), David Bell ("Bell"), Steve Singleton ("Singleton"), Edward Trevino ("Trevino"), Ahsan Hameed ("Hameed"), Brandon Schwartzenburg ("Schwartzenburg"), and Richard Lomas ("Lomas").[6]

    1.   <u>Vincent and Bell</u>

According to Davis, Vincent and Bell violated a Life-Saving Rule but were nonetheless permitted to retire in lieu of termination, whereas Davis was terminated. Even so, the record evidence demonstrates that Davis was not similarly situated to Vincent and Bell. First, Vincent and Bell violated a different rule than Davis. Indeed, they reported to work under the influence

---

[6] Davis does not respond to Motiva's argument that the following additional employees are not valid comparators: Brent Smiley, Dak Toups, Joseph Babineaux, Christopher Jordan, and Garcia. *See Penrod*, 824 F. Supp. 2d at 763 ("Plaintiffs' summary judgment response has abandoned the claim, offering no briefing on the subject.").

of alcohol, a violation of LSR 9, not LSR 1, and Davis's conduct in using his iPhone is far different from reporting to work under the influence of alcohol. Importantly, unlike Davis, both men were eligible for retirement at the time of their infractions. *Ramon v. Cont'l Airlines, Inc.*, 153 F. App'x 257, 259 (5th Cir. 2005) (stating that plaintiff was not similarly situated to proffered comparators where plaintiff "was younger and not as close to being eligible for retirement"); *Nelson v. Gen. Elec. Co.*, 2 F. App'x 425, 431 (6th Cir. 2001) (finding younger employee not similarly situated to older employee who committed similar infraction and was allowed to remain on job for a few extra months and obtain retirement eligibility); *Thomas v. Hilts*, No. 224690, 2002 WL 234757, at *4 (Mich. App. Feb. 15, 2002) (holding that plaintiff who was not of retirement age and comparator who was of retirement age were not similarly situated where comparator was allowed to retire voluntarily while plaintiff was terminated). Further, although Vincent and Bell were subject to the same company-wide LSRs, they worked at PAR rather than PAT, held different jobs, and had different managers. *Aguinaga*, 98 F. App'x at 331 (holding that plaintiff failed to establish a *prima facie* case of discrimination because he did not provide comparator employees in "nearly identical" circumstances, given their different supervisors, job descriptions, and disciplinary rules). Thus, Vincent and Bell are not valid comparators for purposes of Davis's race discrimination claim.

### 2. Singleton

Next, Davis argues that Singleton, a Caucasian employee, was not terminated for violating LSR 1 when he was found to be in possession of a cell phone in a restricted area. Singleton, however, is not a valid comparator, as the circumstances under which he was disciplined were not nearly identical to Davis's. In 2011, Singleton was working at Loading Rack 43—a restricted

area—when a cell phone in his pocket allegedly "rang." Unlike Davis, who admittedly used his phone, Singleton made no use of his phone. Instead, he turned the phone off and, after being directed to do so by his supervisor, ultimately put the cell phone away in his scooter. Notably, Motiva corporate guidelines provide that an employee's mere possession (as opposed to use) of a cell phone in a hazardous work area will not result in termination. Indeed, as Poulter testified, "[h]ad [Singleton] been using his cell phone, he would have been discharged. The fact he had it on his person, in accordance with our company guidelines, he received a lesser penalty."

Davis argues that the Performance Development Employee Discussion Log regarding Singleton's infraction, dated April 4, 2011, contains a handwritten note that Singleton was "using a cell phone on 43 Rack." This document, however, does not alter the analysis, as the investigation into Singleton's actions revealed that he merely possessed, rather than used, his phone. *See* Poulter Aff. pp. 49-50 ("[Singleton] was not using his cell phone in a hazardous area."); *see also Battle v. Ohio Dep't of Rehab. & Corr.*, No. 2:09-CV-651, 2010 WL 3365938, at *12 (S.D. Ohio Aug. 20, 2010) (stating that although "incident reports suggested that [proffered comparator] was using her cell phone to make a phone call, the investigation confirmed that [she] was 'in possession' of her personal cell phone").[7]

Moreover, as the Fifth Circuit has instructed, "the *conduct* that drew the adverse employment decision" must be "nearly identical" to that of the proffered comparator. *See Lee*, 574 F.3d at 260 (emphasis added). Additionally, if "the difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received

_____

[7] In his declaration, Poulter claims that he never viewed this document prior to the instant litigation and did not see it before recommending Davis's termination.

23

from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis." *Turner*, 675 F.3d at 893; *see Burke-Fowler v. Orange Cty.*, 447 F.3d 1319, 1325 (11th Cir. 2006) ("Different types and degrees of misconduct may warrant different types and degrees of discipline."). Here, Davis's conduct in using his phone accounted for the difference in treatment. *See Battle*, 2010 WL 3365938, at *11-12 (concluding that African-American plaintiff, who was terminated for using her cell phone over 800 times while on duty and jeopardizing prison security, was not similarly situated to Caucasian employee who was reprimanded for possessing her cell phone at work).

In addition to the differences in their conduct, Singleton and Davis had different job duties, worked in different locations, and had different managers. Singleton was a rackman at the LOMD at the PAR, and his manager was Micah Petry. By contrast, Davis had a different position (dockman) at the time of his infraction, he worked at the PAT, and his manager was Slater. Further, although the ultimate decisionmaker for both individuals was Rathweg, three of the individuals involved in Davis's case—Slater, Woltjen, and Willms—did not work at PAR at the time of the Singleton case in 2011. Finally, there is no evidence that Singleton committed a host of other safety infractions on the same occasion. For the foregoing reasons, the court finds that Davis and Singleton are not similarly situated.

### 3. Trevino, Hameed, and Schwartzenburg

Davis also argues that Trevino, Hameed, and Schwartzenburg are similarly situated based on their violation of LSR 1 involving their work on a malfunctioning turbine pump. In this incident, Trevino, the lead operator on duty, bypassed an overspeed trip ("OST") so that the turbine pump would stop tripping until plant engineers could arrive. When mechanical engineers

Hameed and Schwartzenburg arrived, they used a diagnostic "strobe light" to measure the pump's RPMs and made adjustments to resolve the problem.

Thereafter, Motiva conducted an investigation and determined there was a "site-wide" misunderstanding pertaining to OSTs on turbines as well as to permitting requirements for diagnostic strobes, which were in daily use throughout the facility. At the time of this incident, Motiva's Procedure for Issuing Work Permits Policy, SHE0052, provided for verbal permit authority (which was obtained from Trevino). Motiva later deleted the verbal permit authority for SHE0052. According to Poulter, "[g]iven the conclusion that . . . [Motiva had] multiple site-wide cultural issues to resolve," Trevino, Hameed, and Schartzenburg received discipline in the form of oral reminders. Other safety measures were also undertaken to prevent future problems of this nature.

The aforementioned circumstances compel the conclusion that Trevino, Hameed, and Schwartzenburg are not valid comparators. Trevino, Hameed, and Schwartzenburg worked in a different part of the site (the Cracking Department at PAR), in different jobs, and under different management.[8] *Aguinaga*, 98 F. App'x at 331. In addition, unlike Hameed and Schwartzenburg, Davis did not operate his phone with permission or any sort of permit, verbal or written. Although Davis asserts that some unnamed individuals were unclear about the dock at Berth 7 being a restricted area, the record evidence simply does not amount to a "site-wide" misunderstanding about cell phone usage in process areas or that cell phones were in daily use throughout Motiva in process areas without permits.

---

[8] Trevino's manager was Ryan Miller. Scott Hoffpauir managed Hameed and Schwartzenburg.

Notes taken during the investigation into Davis's conduct reflect that Davis "admitted he was using his cell phone while working on 7th Berth." During his meetings with investigators, Davis also reportedly acknowledged: "there is a 'No Cell Phones' sign at the entrance of the terminal;" the "zero tolerance for cell phone usage;" and that a contractor was recently removed from the terminal for cell phone use without authorization. At deposition, however, Davis was unable to recall whether he made the aforementioned statements. Davis later claimed that the contractor to whom Motiva refers was not removed for cell phone use but was released for arguing with a Motiva operator about conducting his duties from his vehicle. In any event, the individuals tasked with investigating Davis's infractions, Wolfe and Slater, reached the conclusion that Davis was aware of the rule against cell phone use in a process unit without a proper permit, yet he nonetheless violated the rule.

4.    Lomas

Finally, Davis identifies Lomas as a comparator. In 2014, following Davis's discharge, Lomas received a written reminder and was placed on probation after an investigation revealed that he had failed to communicate a change in nitrogen level to contractors working in a reactor, a violation of SHE0039 (failure to communicate actions). Notably, Lomas did not violate a Life-Saving Rule. *Tabatchnik v. Cont'l Airlines*, No. H-06-1095, 2006 WL 3499524, at *5 (S.D. Tex. Dec. 5, 2006) (stating that courts generally hold that employees who have violated different rules are not considered nearly identical). Additionally, unlike in Davis's case, a permit for the reactor entry had already been issued prior to Lomas's shift. Moreover, Lomas worked in a different part of the site (the Reforming Department), in a different position (assistant operator responsible for using "low octane naphtha" and "molecularly form[ing] it to produce high octane blending

stock"), and operated under different management than Davis (Doug Husen). Based upon the salient differences between Davis and Lomas, a comparison in discipline is inappropriate. Accordingly, the court concludes that Davis has not established that Lomas was similarly situated and treated more favorably under nearly identical circumstances.

In short, because Davis is unable to identify a similarly situated, non-black employee who was not discharged in nearly identical circumstances, he cannot establish a *prima facie* case of discriminatory discharge. Accordingly, summary judgment in favor of Motiva is warranted.

E.    Pretext

Although an analysis of Motiva's alternative grounds for summary judgment is unnecessary, the court notes that summary judgment is proper for the additional reason that Motiva has articulated a legitimate non-discriminatory reason for Davis's discharge (violating LSR 1 by using a cell phone in a restricted area), and there is no credible evidence that Motiva based its decision on any ground other than its good faith belief that Davis was aware of the relevant rules but nonetheless violated LSR 1.

Pretext may be established "either through evidence of disparate treatment or by showing that the employer's explanation is false or 'unworthy of credence.'" *Nasti*, 492 F.3d at 593 (quoting *Laxton*, 333 F.3d at 578); *see Vaughn*, 665 F.3d at 637. "On summary judgment . . . the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price*, 283 F.3d at 720; *accord Franklin v. Boeing Co.*, 232 F. App'x 408, 410 (5th Cir. 2007); *Rubinstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000), *cert. denied*, 532 U.S. 937 (2001). Davis first attempts to meet this burden by questioning the wisdom of Motiva's policy against cell phone

usage in restricted areas and insisting that there was a "site-wide" misunderstanding about Berth 7's status as a process area.

Davis's arguments are unpersuasive for several reasons. First, Davis violated LSR 1. He admitted to using his cell phone (either to record work-related data or to text) at Berth 7 without a permit of any sort. "Normally, a plaintiff's self-serving denial of wrongdoing and conclusory assertion of innocence is insufficient alone to create a fact issue as to the falsity of the defendant's proffered reason for terminating him." *Alzuraqi v. Grp. 1 Auto., Inc.*, 921 F. Supp. 2d 648, 672 (N.D. Tex. 2013) (citing *Jackson*, 602 F.3d at 379). The investigators in this matter, which included Wolfe and Slater (an African-American woman), reached the conclusion that Davis was, in fact, aware of the relevant rules but nonetheless violated them. Slater testified that "no one under [her] supervision" told her of a belief that Berth 7 is not a process unit, explaining that although she was unaware of documentation or signs specifically stating that Berth 7 is a "process" area, she considered it a process unit based on her knowledge and experience in light of the hazardous chemicals that regularly come through the area. In any event, the Permit to Work Book (which was issued to Davis) "highlights areas that are hazardous," and it identifies the "Port Arthur terminal which includes Berth 7" as an "electrically classified" area. As noted above, a Hot Work Permit must be "obtained before introducing any source of ignition into a process unit/area or in or near (within 35 feet) electrically classified areas (significant amount of flammable or combustible material)." Motiva's Production Supervisor in the Logistics Department, James Orr, confirmed that "operators have access to the P&ID drawings and electrical classifications are part of those drawings." Significantly, these drawings identify Berth 7 as a process area or a classified area. Further, signage at the dock at Berth 7 on January 13,

2014, stated "NO CELL PHONE USE IN THIS AREA." Davis reportedly does not recall any such sign; nonetheless, he does not deny its existence. Although Davis claims that other people were under the same misconception about Berth 7's status as a process unit, he was unable to provide specifics and, even putting aside the reported admissions he made during the investigation by Slater and Wolfe, Motiva reasonably concluded that Davis was aware of the relevant rules through training and experience.

As a result, Davis's contention that he did not violate LSR 1 or that he was not aware he was violating LSR 1, even if true, does not necessarily demonstrate pretext.[9] "[T]he inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief." *Waggoner v. City of Garland*, 987 F.2d 1160, 1165-66 (5th Cir. 1993); *accord Chamblee v. Miss. Farm Bureau Fed'n*, 551 F. App'x 757, 760 (5th Cir. 2014); *Johnson v. Louisiana*, 369 F.3d 826, 832 n.7 (5th Cir. 2004); *Ramirez v. Landry's Seafood Inn & Oyster Bar*, 280 F.3d 576, 579 n.4 (5th Cir. 2002); *Singh v. Shoney's, Inc.*, 64 F.3d 217, 219 (5th Cir. 1995). Even if Motiva's investigators erred, Davis has adduced no evidence suggesting that Motiva acted in bad faith when determining that Davis knowingly violated LSR 1. Indeed, "a dispute in the evidence concerning [Davis's actions and his claimed misunderstanding about Berth 7] does not provide a sufficient basis for a reasonable factfinder to infer that [Motiva's] proffered justification is unworthy of credence." *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991). "Management does not have to make proper decisions, only

---

[9] As an aside, company confusion regarding the potential punishment for violations of LSRs (based upon colored logo cards) is not relevant to whether Davis was aware of and violated the rules prohibiting the use of un-permitted cell phones in process and electrically charged areas.

non-discriminatory ones." *Delaval v. PTECH Drilling Tubulars, L.L.C.*, ___ F.3d ___, No. 15-20471, 2016 WL 3031069, at *3 (5th Cir. May 26, 2016) (quoting *Bryant*, 413 F.3d at 478).

Importantly, Title VII does not "require the employer to have good cause for its decisions. The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) (citing *Megill v. Bd. of Regents*, 541 F.2d 1073, 1077 (5th Cir. 1976)); *see Bryant*, 413 F.3d at 478; *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1182 (5th Cir. 1996); *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 435 n.19 (5th Cir. 1995); *Risher v. Aldridge*, 889 F.2d 592, 598 (5th Cir. 1989). "While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination." *Nix*, 738 F.2d at 1187 (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1012 n.6 (1st Cir. 1979)). Indeed, "[e]mployment discrimination laws are 'not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . to transform the courts into personnel managers.'" *Bryant*, 413 F.3d 478 (quoting *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988)).

Apart from claiming that he did not understand that Berth 7 was a process area, Davis appears to suggest that Motiva's stated reason for terminating him was pretextual or false and unworthy of credence because: he determined his actions were not hazardous by conducting a gas test; trucks and other locomotives were reportedly operated without permits at the loading racks; two African-American employees were terminated by Motiva; political cartoons and emails were sent to or seen by Davis; and Motiva allegedly supplied false information to the EEOC. As with his prior arguments, these are without merit.

First, Motiva's rules prohibiting the un-permitted use of cell phones in process areas does not have an exception for circumstances in which an employee conducts a gas test and determines his actions are safe. Second, there is no evidence that the relevant Motiva managers were aware of Davis's or other individuals' driving scooters or trucks on the PAT docks without Hot Work Permits.

Third, to establish pretext by proffering comparators, the Fifth Circuit has stated that a court must "compare the treatment of other employees whose conduct is 'nearly identical' to the plaintiff's conduct and who were treated more favorably than the plaintiff." *Keller v. Coastal Bend Coll.*, 629 F. App'x 596, 602 (5th Cir. 2015) (quoting *Sandstad*, 309 F.3d at 901). Indeed, "[a]necdotes about other employees cannot establish that discrimination was a company's standard operating procedure unless those employees are similarly situated to the plaintiff." *Wyvill*, 212 F.3d at 302; *Carroll v. Sanderson Farms, Inc.*, No. H-10-3108, 2012 WL 3866886, at *17 (S.D. Tex. Sept. 5, 2012). Davis points to one African-American individual who was discharged after he reported to work intoxicated and another whose employment was terminated for a "lock out tag out" infraction (a violation of one of the "Cardinal Safety Rules," predecessors to the LSRs).[10] A simple comparison of the aforementioned cases to Davis's confirms the employees were not similarly situated. As a result, this evidence does not create a genuine issue of material fact regarding pretext.[11] *See Khalfani v. Balfour Beatty Cmtys., L.L.C.*, 595 F. App'x 363, 367 (5th

---

[10] For the second individual, a labor arbitrator, applying "just cause" principles under a Collective Bargaining Agreement, converted the disciplinary penalty from discharge to a 30-day suspension.

[11] Notably, Motiva identifies other cases in which African-American employees have *not* been discharged for lock out tag out or permit violations: Bobby Ellis and Angela Rosham. Moreover, there are instances in which Motiva has ended the employment of non-African-American employees for LSR violations (*e.g.*, Vincent and Bell).

Cir. 2014) ("Though we have held that differential treatment of *similarly-situated* employees can show pretext, we require that the contexts be nearly identical.") (emphasis added); *see also Waterman v. McKinney Indep. Sch. Dist.*, 642 F. App'x 363, 369 (5th Cir. 2016).

Davis's efforts to show pretext or to demonstrate racial animus on the part of Motiva based on certain political cartoons and emails are also unavailing. Davis identifies the following: (1) cartoons depicting President Obama, including one with "Joe the Plumber's" plunger on his face; (2) the name "OBAMA" scratched on a piece of equipment in the south tank farm at PAR; and (3) and a mass email sent in 2010 by a fellow Motiva operator disagreeing with President Obama's politics. The cartoons were posted on a locker by an unknown person while Davis worked at the LOMD, over a year prior to his discharge. Davis never reported the posters to Motiva. Similarly, it is unknown who scratched "OBAMA" on the equipment at PAR, and Davis never complained to his superiors. With regard to the 2010 email, Davis replied: "To Whom it May Concern: If I don't ask you to send me an email concerning politics, family, or religion, please don't do so. Thanks."[12] The sender did not forward additional emails to Davis, and Davis did not report the matter.

It is well-settled that such comments are evidence of discrimination "only if they are: (1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained-of adverse employment decision; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue."[13]

_____

[12] Interestingly, Davis did not mention "race" in his reply to the 2010 email.

[13] Because Davis's evidence of pretext is "weak or non-existent," application of the Fifth Circuit's "stray remark" doctrine is appropriate. *Manaway v. Med. Ctr. of Se. Tex.*, 430 F. App'x 317, 323 n.3 (5th Cir. 2011); *see Auguster*, 249 F.3d at 405 (applying the stray remark doctrine where "the plaintiff has failed to produce substantial evidence of pretext").

*Jackson*, 602 F.3d at 380; *accord Manaway*, 430 F. App'x at 323. Here, none of the emails or cartoons relate directly to the "protected class of persons of which [he] is a member," *i.e.*, African American. *Jackson*, 602 F.3d at 380; *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 886 (S.D. Tex. 2010); *Ricketts v. Champion Chevrolet*, No. C-04-242, 2005 WL 1924372, at *4 n.3 (S.D. Tex. Aug. 11, 2005). Accordingly, the aforementioned comments were, at most, mere "stray remark[s]," which, standing alone, are insufficient to defeat summary judgment. *See Manaway*, 430 F. App'x at 323; *Jackson*, 602 F.3d at 380; *Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 343-44 (5th Cir. 2002), *cert. denied*, 537 U.S. 1108 (2003).

Further, none of the coworkers who forwarded any political emails played a role in the investigation of Davis's infraction or the discharge decision. *See Keelan*, 407 F.3d at 345-46 (holding remarks made by personnel who were not involved in and did not influence decision to terminate plaintiff and that were not made in connection with the plaintiff's discharge insufficient to create a fact issue). Moreover, Davis admitted that he never heard any derogatory statements about race at any time during his employment by Motiva. Therefore, Davis's subjective belief that Motiva acted with discriminatory animus, "however genuinely held, is not sufficient evidence of pretext." *Septimus v. Univ. of Houston*, 399 F.3d 601, 610 (5th Cir. 2005); *see Delaval*, 2016 WL 3031069, at *3.

Lastly, Davis asserts that summary judgment should be denied because "the record may show that Motiva . . . [made] misleading or false responses to the . . . [EEOC] that . . . it had fired both black and white employees for operating a cell phone in a classified area without a valid permit." Motiva's response to the charge, however, actually states: "The Company has a consistent record of terminating employees both Black and Non-Black for similar infractions

posing a high safety risk." Because a review of the record reveals support for this statement, Motiva did not mislead the EEOC.

F.     Motivating Factor

Here, Davis appears to contend that race was the only reason for his discharge, making the mixed-motive paradigm inappropriate. Nevertheless, after a review of the record, the court finds there is no evidence that race played any role in Davis's discharge. Furthermore, summary judgment is warranted on the additional ground that Motiva has established it would have made the same decision without regard to Davis's race based on Motiva's determination that he used his iPhone without a permit in violation of LSR 1, and corporate guidance instructs that the penalty for "using" a cell phone in a hazardous area is discharge. Accordingly, any "mixed-motive" argument fails. *See Keelan*, 407 F.3d at 341.

III.    Conclusion

Consistent with the foregoing analysis, Motiva's motion for summary judgment is granted. Davis fails to present a claim that warrants relief. There remain no material facts in dispute, and Motiva is entitled to judgment as a matter of law.

SIGNED at Beaumont, Texas, this 2nd day of September, 2016.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE